[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13987
Non-Argument Calendar
_____

Agency No. A79-421-665

STANLEY TOUSSAINT,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 16, 2008)**

Before TJOFLAT, BLACK and FAY, Circuit Judges.

PER CURIAM:

Stanley Toussaint, a native and citizen of Haiti, appeals the Board of Immigration Appeals's ("BIA") denial of his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Toussaint argues that the BIA erred in finding that he had not established past persecution or a well-founded fear of future persecution on account of his imputed political opinion. Toussaint also argues, for the first time on appeal, that he established past-persecution or a well-founded fear of future persecution on account of his membership in a particular social group. Toussaint fails, however, to provide any argument on the BIA's denial of withholding of removal and CAT relief. For the reasons discussed below, we deny the petition as to Toussaint's asylum claim, to the extent that it is based on his imputed political opinion; deny the petition as to Toussaint's withholding of removal and CAT claims; and dismiss the petition as to Toussaint's asylum claim based on his membership in a particular social group.

**I.**

In his application for asylum, withholding of removal, and CAT relief, Toussaint alleged that he had been and would be persecuted because of his father's political activity in Haiti. Specifically, Toussaint explained that his father had served as a judge, attorney, and Senate treasurer. While these positions opened

2

many doors for Toussaint's family, they also exposed the family to danger. When now-former President Jean-Bertrand Aristide and his Lavalas political party were in power, members of the opposition party viewed Toussaint's father as pro-Lavalas and threatened him with harm. When Aristide was removed from power in 2004, Lavalas supporters viewed Toussaint's father as pro-opposition and threatened him with harm. Because of these threats, Toussaint's family had been forced into hiding, and Toussaint had been forced to flee to the United States. Toussaint feared that, if he returned to Haiti, Lavalas supporters would target him for failing to support the Lavalas party. He feared that he would be tortured because Lavalas supporters commonly used torture as a means of overcoming political opposition.

At his individual hearing, Toussaint testified that because of his father's precarious political position, his family had been persecuted by both Lavalas supporters and the opposition, known as the "Convergence." The persecution from Lavalas supporters consisted of constant threats to his father. The persecution from the Convergence consisted of, in June 2000, spray painting a Creole slang term for "problem person" on Toussaint's family's house, Toussaint's father's car, and Toussaint's father's office door.

Because of this persecution, Toussaint's father sent him to the United States. However, Toussaint's father could not obtain visas for Toussaint's two older

3

brothers, one older sister, and one younger sister because Haitian law required visa applicants over the age of 18 to individually apply for a visa and prove individual wealth. Thus, Toussaint's family remained in Haiti. Indeed, although his father had visited him in the United States on three occasions, he had returned to Haiti after each visit. Toussaint's last communication with his father was four months before the hearing. At that time, Toussaint's father told him that condition in Haiti remained "not good."

An immigration judge ("IJ") denied Toussaint's application for asylum, withholding of removal, and CAT relief. On appeal, the BIA affirmed the IJ's denial. The BIA reasoned that Toussaint had not established past persecution, as the alleged harm that Toussaint and his family suffered did not rise to the level of persecution. The BIA also reasoned that the IJ correctly found that Toussaint had not established a well-founded fear of future persecution, especially as his family remained unharmed in Haiti.[1]

---

[1] We note that the parties disagree on the scope of our review. Toussaint argues that we should review the IJ's and BIA's decisions, while the government argues that we should review the BIA's decision only. When the BIA issues a summary affirmance of the IJ's decision, we review the IJ's opinion. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). When the BIA affirms the IJ's decision, but issues a separate opinion, however, we review the BIA's opinion "except to the extent that [the BIA] expressly adopts the IJ's opinion." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). Here, we find that the BIA issued a separate opinion. See id. The reasoning offered by the BIA diverged in two important respects from that of the IJ. First, the IJ's decision did not contain a clear past persecution finding, but the BIA's did. Second, the IJ's decision contained an express adverse credibility finding, but the BIA's opinion said nothing of Toussaint's credibility or the believability of his story. Therefore, we will review only the BIA's opinion, and will not address

4

We review the BIA's legal determinations <u>de novo</u> and factual determinations under the "substantial evidence test." <u>See</u> <u>D-Muhumed v. U.S. Att'y Gen.</u>, 388 F.3d 814, 817 (11th Cir. 2004); <u>Al Najjar v. Ashcroft</u>, 257 F.3d 1262, 1283-84 (11th Cir. 2001). Under this test, which is "highly deferential," we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>Al Najjar</u>, 257 F.3d at 1283-84 (quotation omitted). In order to reverse a finding of fact, "we must find that the record not only supports reversal, but compels it." <u>Mendoza</u>, 327 F.3d at 1287.

In conducting our review, we will not consider arguments presented before the IJ or BIA but not discussed on appeal. <u>Sepulveda v. U.S. Att'y Gen.</u>, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned"). Also, we lack jurisdiction to consider arguments raised for the first time on appeal. <u>Al Najjar</u>, 257 F.3d at 1294 (explaining that "a court lacks jurisdiction to consider a claim which has not first been presented to the Board, as an alien must exhaust the administrative remedies available to him prior to obtaining judicial review").

An alien who arrives in or is present in the United States may apply for, <u>inter</u>

---

any issues dealing with Toussaint's credibility. <u>See</u> <u>id.</u>

alia, asylum. INA §§ 208(a)(1), 241, 8 U.S.C. §§ 1158(a)(1). To qualify for asylum, the alien must prove that he is a refugee. Al Najjar, 257 F.3d at 1284 (citing 8 U.S.C. § 1101(a)(42)(A)). A refugee is defined in the INA as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). To establish refugee status, the alien must establish, through specific, detailed facts, (1) his past persecution on account of a protected ground, or (2) his "well-founded fear" that he will be persecuted in the future because of a protected ground. 8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287.

A well-founded fear of future persecution may be established by showing (1) past persecution that creates a rebuttable presumption of a well-founded fear of future persecution based on a protected ground, (2) a reasonable possibility of personal persecution based on a protected ground, or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which the alien is a part. 8 C.F.R § 208.13(b)(1), (b)(2)(i) and (iii). In establishing the possibility of personal persecution, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution."

6

Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1009 (11th Cir. 2005) (quotation omitted). An alien's allegations of a future threat are less persuasive if the alien's family remains in his country without incident. See Ruiz v. U.S.Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006). In establishing a pattern or practice of persecution, the alien need not prove that he would be singled out for persecution if he demonstrates (1) a pattern or practice of persecution of similarly situated individuals and (2) that his inclusion in that group of individuals makes his fear of persecution reasonable. See 8 C.F.R. § 208.13(b)(2)(iii). In establishing any of the above, the alien must demonstrate that his fear "is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.

While the INA does not expressly define "persecution," we have recognized that it is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that [m]ere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (quotations omitted) (concluding that "menacing" telephone calls and threats to the alien and her brother did not constitute past persecution).

### III.

As to Toussaint's imputed-political-opinion asylum claim, we hold that substantial evidence supports the BIA's holding that Toussaint did not meet the requirements to merit asylum. See 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at

7

1287. The evidence does not compel a finding that Toussaint suffered past persecution. See Mendoza, 327 F.3d at 1287. The alleged persecution described by Toussaint, which consisted of threats and spray-painted slogans on his family's house, his father's car, and his father's office door, did not rise to the level of persecution within the meaning of the asylum statutes. See Sepulveda, 401 F.3d at 1231. The threats made on his family, which Toussaint failed to describe in any detail, constituted mere verbal harassment, at most. The spray-painted slogan denoting Toussaint's father as a "problem person" likewise appears to have been an effort at intimidation, at most.

Likewise, the evidence does not compel a finding that Toussaint has a well-founded fear of future persecution. See Mendoza, 327 F.3d at 1287. First, Toussaint did not provide "specific, detailed facts" showing a reasonable probability that he will be singled out for persecution if returned to Haiti. See 8 C.F.R § 208.13(b)(1), (b)(2)(i) and (iii); Huang, 429 F.3d at 1009. Toussaint did not illustrate that Lavalas supporters or the Convergence remain interested in his father or himself. Toussaint also testified that his entire family remains in Haiti. While Toussaint did not testify that they remain in Haiti unharmed, he provided no evidence to believe otherwise. This fact suggests that the alleged danger faced by Toussaint is not as great as he claims. See Ruiz, 440 F.3d at 1259. His explanation that his siblings had to remain in Haiti because their ages required

8

them to individually apply for visas does not diminish this weakening effect, as Toussaint testified that he had a younger sister at the time who would not have fallen under Haiti's individual-application rule and as he did not explain why none of his siblings attempted to individually apply or otherwise seek asylum in United States. Second, Toussaint provided no evidence to suggest that he belongs to a statutorily defined group of individuals that the Lavalas party and the Convergence have a pattern and practice of persecuting. See 8 C.F.R. § 208.13(b)(1), (b)(2)(i) and (iii). Because Toussaint did not establish past persecution or a well-founded fear of future persecution on account of his imputed political opinion, we deny the petition as to this claim. See D-Muhumed, 388 F.3d at 817.

As to Toussaint's social-group asylum claim, we hold that we lack jurisdiction to consider this claim. See Al Najjar, 257 F.3d at 1294. Toussaint did not raise this argument before the IJ or BIA. Accordingly, we dismiss the petition as to his claim.

Finally, as to the BIA's denial of withholding of removal and CAT relief, we hold that Toussaint has abandoned any argument that this was error. See Sepulveda, 401 F.3d at 1228 n.2. Toussaint failed to provide any argument on this matter in his brief on appeal. Accordingly, we deny the petition as to Toussaint's withholding-of-removal and CAT-relief claims.

**PETITION DENIED IN PART, DISMISSED IN PART.**

9