[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10167
Non-Argument Calendar

_____

Agency No. A96-271-718

MARIBEL RESTREPO,
a.k.a. Maribel Restrepo-Restrepo,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 20, 2008)

Before TJOFLAT, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Maribel Restrepo petitions for review of the Board of Immigration Appeals' (BIA) decision affirming the immigration judge's (IJ) final order of removal and denial of asylum, withholding of removal under the Immigration and Nationality Act (INA), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT). Restrepo contends that substantial evidence supports neither the IJ's adverse credibility determination nor its alternative determination that Restrepo failed to establish statutory eligibility for asylum, withholding of removability, or protection under CAT.

**I.**

On June 17, 2002, Restrepo, a native and citizen of Colombia, arrived in the United States on a non-immigrant visa with authorization to remain in the country until December 17, 2002. On or about December 3, 2002, Restrepo filed a timely application for asylum, contending that the Revolutionary Armed Force of Colombia ("FARC") would kill her if she returned to Colombia. Restrepo stated that she was forced to flee Colombia after receiving death threats from FARC guerillas due to her involvement with an alternative political movement, "Alternative Movement Only One Color Remedios" ("Alternative Movement"), which included supporting a mayoral campaign in her hometown of Remedios in 2002.

On January 22, 2003, Restrepo was served with a notice to appear, charging that she was removable, pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1127(a)(1)(B), for remaining in the United States for a period longer than permitted. On May 13, 2004, Restrepo appeared before an IJ and, through counsel, conceded removability and sought relief from removal in the form of asylum, withholding of removal, and protection under CAT.

Restrepo was the sole witness at the hearing on her application for relief and testified as follows. In 2001 Restrepo began collaborating with the Liberal Party and was the coordinator of the campaign "Los Del Lelos," whereby she would travel to the farms around Remedios every eight days and encourage the farmers to resist FARC by supporting Jario Hugo Escobar's mayoral campaign. Restrepo "was the person most centered on" Escobar's campaigning among the farmers because the farmers all knew her from when she traveled to the villages with her father, who had been a well-known political leader in the area.

FARC began to harass her because of her involvement Escobar's campaign. On December 14, 2001, members of FARC stopped Restrepo's car, searched her, and seized several documents, including her Liberal Party provisional identification card and other documents related to Escobar's campaign. On February 12, 2002, an armed guerilla came to Escobar's political headquarters in Remedios with a message for Restrepo from the Fourth Front of FARC. The

guerilla told Restrepo that she should not go back to the farms to carry out her "shitty politicking." On March 9, 2002, Restrepo received a telephone call from a man identifying himself as an acquaintance of her father's warning her that FARC was planning to kill her. That evening, Restrepo went to hide at her family's farm. When she arrived, she found her brother and two employees beaten and tied up, and the house had been ransacked by FARC. Restrepo did not report this incident to the authorities because she believed that the guerillas had infiltrated the farm. The next day, she and her brother fled to Medellin and Restrepo went into hiding at a relative's house. But FARC soon found her in Medellin and would call her and leave threatening messages. The anxiety and emotional harm caused by these threats led Restrepo to seek therapy three or four times a week. Eventually, these threats drove Restrepo to flee the county; Restrepo fears that FARC will harm her if she returns.

The IJ denied Restrepo's claims for relief, finding that her testimony was not credible. In particular, the IJ took issue with three perceived defects in Restrepo's testimony. The first was the date of the mayoral election. At the hearing, Restrepo testified that the election was held on October 29, 2002. This was inconsistent with a letter from Escobar, which was included in Restrepo's application for asylum, which was dated October 15, 2002 and stated that the elections occurred on June 30. When the IJ confronted Restrepo with this inconsistency, she testified

4

that there had been an interim mayoral election in June but maintained that the election she worked on with Escobar was on October 29. When the IJ continued to ask about the elections on June 30, Restrepo was unable to explain what the interim election was for, or what the result was, stating only that it was "the other." In his oral opinion, the IJ stated the he felt it was reasonable to expect someone so involved in a campaign to know the date of the election. Further, the IJ was troubled by the fact that Restrepo could not remember the last name of the doctor who treated her for anxiety and stress in Medellin, and further, that when Restrepo sought treatment in the United States for her nervous condition, she did not tell her treating neurologist about any of the harassment she suffered in Colombia.

The IJ found that Restrepo had failed to provide sufficient credible testimony to support her claims for relief. The IJ also made an alternative ruling that, even assuming Restrepo was telling the truth, the harassment she suffered was insufficient to establish eligibility for asylum, withholding of removal, or relief under CAT. In his alternative holding, the IJ found that Restrepo's allegations of harassment were insufficient to establish past persecution. Further, he found that her claim for a well-founded fear of future persecution was undermined by the fact that Restrepo's mother and siblings have lived in Colombia unharmed since her departure. Restrepo appealed to the BIA, which affirmed both the IJ's adverse credibility finding and his alternative ruling that Restrepo's allegations failed to

5

meet the statutory requirements for asylum, withholding of removal, or relief under CAT.

## II.

### A.

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. In this case the BIA issued a written opinion that did not expressly adopt the IJ's opinion but did adopt the IJ's reasoning. Accordingly, we will review the BIA's opinion, as well as the IJ's decision. See id.

We review de novo any legal determinations by the BIA, but we review its factual determinations under the "substantial evidence test." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817–18 (11th Cir. 2004). As we have repeatedly recognized, the substantial evidence test is highly deferential, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (internal quotation marks and citation omitted). "Findings of fact made by the Immigration Judge may be reversed by this Court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Silva v. U.S. Att'y

6

Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (alterations and quotation marks omitted). Credibility determinations are findings of fact reviewed under the substantial evidence test and "[we] may not substitute [our] judgment for that of the BIA with respect to credibility findings." D-Muhumed, 388 F.3d at 818. Further, "we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

## B.

Restrepo contends that the BIA erred in upholding the IJ's adverse credibility finding because the IJ found virtually all of her testimony consistent, except for two unimportant details: the date of the mayoral election in which she was involved and the last name of the therapist who treated her in Medellin. She further contends that she established a well-founded fear of future persecution based on her past persecution by FARC. The government responds that the BIA properly affirmed the IJ's adverse credibility determination because the IJ provided specific, cogent reasons for his determination and the record does not compel reversal. We agree.

An alien present in the United States may be granted asylum if the alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(a)(1), (b)(1). A "refugee" is

7

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of proving that she is a refugee. D-Muhumed, 388 F.3d at 818.

To be eligible for asylum based on the applicant's political opinion, the applicant must offer "specific, detailed facts" showing that she will be "singled out for persecution on account of" those political beliefs. Id. Demonstrating past persecution creates a rebuttable presumption of future persecution. See id.

Although an applicant's credible testimony may be sufficient to justify eligibility for asylum, "[i]f the applicant produces no evidence other than his testimony, an adverse credibility determination is alone sufficient to support the denial of an asylum application." Forgue v. U.S. Att'y Gen., 401 F.3d, 1282, 1287 (11th Cir. 2005) (citations omitted). When making an adverse credibility determination, an IJ must provide "specific, cogent reasons" for that determination. Id. Additionally, where an applicant submits evidence in addition to her own testimony, the IJ must also consider that evidence and may not deny an application based "solely on an adverse credibility determination in those instances." Id. "The

8

weaker an applicant's testimony, however, the greater the need for corroborative evidence." Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).

Here, the IJ offered specific, cogent reasons for his adverse credibility determination. First, the IJ was justifiably troubled by Restrepo's testimony that the mayoral elections took place on October 29, 2002, when Escobar's letter stated that they took place on June 30, as well as her inability to explain that discrepancy. According to the IJ, it would be reasonable "to assume that an individual with her background would recall that date[,] having spoken to farmers on a once a week basis" in support of the campaign. The IJ also listed Restrepo's inability to remember the name of the therapist who treated her in Medellin as further calling into question both the veracity of her claims and the authenticity of the documents that she submitted in support of her claim. Thus, it appears that the IJ reviewed all of the evidence submitted by Restrepo, although he did so in light of his belief that Restrepo was not a credible witness. Our review of the record reveals that Restrepo's testimony was often difficult to follow and internally inconsistent. This may have been because Restrepo's story was fabricated to some extent or it may have been because Restrepo was nervous, confused, and testifying through an interpreter. Reviewing a cold record, we simply cannot tell. We must defer to the IJ's conclusions in that regard. Viewing the evidence in a light most favorable to affirming the agency's decision, we conclude that there was substantial evidence to

9

support the IJ's adverse credibility determination. Given that determination, nothing in the record compels us to overturn the BIA's holding that Restrepo failed to establish a well-founded fear of future prosecution. Because we accept the IJ's adverse credibility determination, we need not consider the IJ's alternative finding that, even assuming Restrepo's allegations were true, they were insufficient to satisfy the requirements for asylum.

## C.

Turning to Restrepo's claim for withholding of removal, we conclude that she cannot show that it is "more likely than not" that her life or freedom would be threatened upon her return to Colombia. We have recognized that "[t]his standard is more stringent than the 'well-founded fear' standard for asylum." D-Muhumed, 388 F.3d at 819. And we have repeatedly held that where an applicant failed to satisfy the lesser standard for asylum, the applicant cannot meet the standard for withholding of removal. See, e.g., id.; see also Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232–33 (11th Cir. 2005). Thus, we must affirm the BIA's ruling on this issue.

## D.

Finally, Restrepo cannot prevail on her claim for relief under the CAT. To be eligible for relief under the CAT, Restrepo must demonstrate that "it is more

likely than not" that she will be tortured upon her return to Colombia. See 8 C.F.R. § 208.16(c)(2). Further, the torture must be "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Sanchez-Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1239 (11th Cir. 2007) (quoting 8 § C.F.R. 208.18(a)(1)). Although it is clear from the State Department's Country Report on Colombia's human rights practices that FARC has a significant presence in Colombia and a history of widespread violence and intimidation, we have previously held that an applicant cannot establish relief under the CAT based on the conduct of FARC. See Sanchez-Jimenez, 492 F.3d at 1239 (citing Reyes-Sanchez v. U.S. Att'y Gen, 369 F.3d 1239, 1242–43 (11th Cir. 2004))..

## III.

Accepting the credibility determination of the IJ, the record does not compel us to reverse the BIA's ruling.

**PETITION DENIED.**