[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12058
Non-Argument Calendar

_____

Agency Nos. A98-614-322
A98-614-323

EDDY LEONEL GUERRA CABRERA,
LESLIE MAGALY ESTRADA ROMERO,
BRENDA LISETH GUERRA ARDON,
JOSELIN YAZMIN GUERRA ESTRADA,
EDDY LEONEL GUERRA ESTRADA,
WILLIAM GUSTAVO ESTRADA ARDON,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 18, 2008)**

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Eddy Guerra Cabrera, his wife, Leslie Estrada Romero, and his children, William Guerra Ardon, Brenda Guerra Ardon, Joselin Guerra Estrada, and Eddy Guerra Estrada ("Petitioners"), natives and citizens of Guatemala, appeal the order by the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ's") order of removal and denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"). For the reasons set forth below, we deny the petition.

## I.

The Petitioners claim that they were persecuted by Guatemalan police officers on account of their imputed political opinions. Specifically, the Petitioners allege that they filed complaints with the police concerning ill-treatment by police officers and that these police officers interpreted the complaints as contrary political opinions and persecuted them.

Specifically, in their application, the Petitioners alleged that, in 2000, Eddy Guerra Cabrera's business was robbed and, several months after that incident, four people assaulted and attempted to kill Leslie Estrada Romero. Many months thereafter, the Petitioners began receiving threatening telephone calls. One of the callers identified himself as "Fox," indicated that he "had the Police in [his] control," and threatened to kill the Petitioners. In January 2004, two people

identifying themselves as police officers broke into the Petitioners' house and kidnaped Leslie Estrada Romero, ultimately raping her and breaking her nose before she managed to escape. Eddy Guerra Cabrera learned from friends that his ex-wife, who was related to several police and army officers and who was dating a man called "Fox" who also had ties to the police and army, was "involved in" the attack on Leslie Estrada Romero. The Petitioners fled Guatemala. Later, they learned that the police officers who had kidnaped Leslie Estrada Romero had visited their former home looking for them several times.

The Petitioners submitted: (1) an article detailing police officer abuses against women, including sexual assault; (2) articles explaining that a band of police officers that had been robbing civilians had been captured; (3) a certificate signed by a doctor on January 12, 2003, to the effect that Leslie Estrada Romero had been treated for a broken nose at a hospital; (4) a certificate signed by a gynecologist who treated Leslie Estrada Romero at a hospital and found that she had "soft abdomen with pain . . . [and] inflammatory changes in vaginal walls"; and (5) the U.S. Department of State Guatemala Country Report on Human Rights Practices for 2005, stating that police officers were suspected of being involved in approximately 24 killings, 11 kidnapings, and several rapes, sometimes with impunity, and that non-state actors with links to organized crime and gangs had committed hundreds of killings and other crimes.

At their merits hearing, Eddy Guerra Cabrera testified that the Petitioners received threatening telephone calls. The "boss" of the people who made these calls was called "Fox." The Petitioners filed a complaint about these calls with the police. In 1999, the Petitioners received a telephone call from a person in Fox's group who stated that "something bad was going to happen to one of [Eddy Guerra Cabrera's] family members." Later, Eddy Guerra Cabrera's father was murdered. Eddy Guerra Cabrera believed that his father was murdered because of the aforementioned complaints. The police never prosecuted anyone for this murder. In 2000 or 2001, men identifying themselves as police officers robbed the Petitioner's family jewelry business and assaulted Leslie Estrada Romero. On January 12, 2004, armed men identifying themselves as police officers broke into his house, kidnaped Leslie Estrada Romero, and ultimately broke the nose of and raped Leslie Estrada Romero. The armed men threatened to kill Leslie Estrada Romero also, but she managed to escape. Later that day, the Petitioners filed a complaint with the police and arranged to flee Guatemala. The police later informed the Petitioners that they could not find the men who had kidnaped and raped Leslie Estrada Romero and that the family should "hide." Eddy Guerra Cabrera believed that his ex-wife was involved in the persecution of his family. They had not ended their relationship on good terms and she had threatened him several times. She had several family members who were police or army officers.

4

Indeed, on cross-examination, Eddy Guerra Cabrera admitted that, because of the problems he had with his ex-wife and their subsequent divorce, his ex-wife had "[gone] after [him] through friends" and that, had they not had these problems or gone through a divorce, the Petitioners likely would not have been persecuted.

The IJ denied the Petitioners' application. The IJ reasoned that the Petitioners "suffer[ed] from credibility issues" because their application lacked corroboration and many of their claims seemed impossible. However, giving the Petitioners the benefit of the doubt and assuming their claims were credible, they nevertheless had not established a nexus between their persecution and an imputed political opinion. Nothing in the record established that the police imputed a political opinion from the fact of the Petitioners filing complaints with the police regarding ill-treatment by the police. Rather, it appeared that the Petitioners' problems stemmed from the fact that Eddy Guerra Cabrera's ex-wife had direct links to the police and army. Because the Petitioners could not satisfy their burden or proof for asylum relief, it followed that they could not satisfy the more-stringent burden of proof for withholding of removal. Likewise, because the record demonstrated that any torture inflicted on the Petitioners was done at the hands of corrupt police officers, and that the government was trying to control these corrupt police officers, the Petitioners could not satisfy their burden for CAT relief.

On appeal, the BIA affirmed the IJ's denial of relief. The BIA reasoned that

it agreed with the IJ that the Petitioners had failed to demonstrate eligibility for asylum, as evidence that they filed a complaint with the police regarding other police was insufficient to establish that what happened to them happened because of their imputed political opinions. It also agreed with the IJ that the Petitioners generally had failed to provide evidence corroborating Eddy Guerra Cabrera's account of events. Because the Petitioners could not satisfy their burden regarding asylum, they also could not satisfy their more-stringent burden regarding withholding of removal. Because the Petitioners did not challenge the IJ's denial of CAT relief, the BIA would not address that matter.

## II.

When the BIA affirms the IJ's decision, but issues a separate opinion, we review the BIA's opinion "except to the extent that [the BIA] expressly adopts the IJ's opinion." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). When reviewing the BIA's opinion, we review legal determinations de novo and factual determinations under the "substantial evidence test." See D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004); Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001). Under this test, which is "highly deferential," we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted). In order to reverse a

6

finding of fact, "we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). When an IJ does not expressly find a petitioner incredible, the petitioner's testimony must be accepted, even without corroborating evidence. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (holding that an IJ's statement that an applicant's testimony was "extremely inconsistent" was not an express, or "clean," credibility finding). We will not consider arguments presented before the IJ or BIA but not discussed on appeal. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1282 n.2 (11th Cir. 2005) (explaining that "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned").

An alien who arrives in or is present in the United States may apply for, inter alia, asylum and withholding of removal. INA §§ 208(a)(1), 241, 8 U.S.C. §§ 1158(a)(1), 1231(b)(3)(A), 8 C.F.R. § 208.16(c). To qualify for asylum, the alien must prove that he is a refugee. Al Najjar, 257 F.3d at 1284 (citing 8 U.S.C. § 1101(a)(42)(A)). A refugee is defined in the INA as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). This list of protected grounds

7

also encompasses an "imputed political opinion," or a political opinion falsely attributed to the alien by his persecutors. Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004).

To establish refugee status, the alien must establish, through specific, detailed facts, (1) his past persecution on account of a protected ground, or (2) his "well-founded fear" that he will be persecuted in the future on account of a protected ground. 8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287. Regarding the nexus element of this standard, the applicant must demonstrate that one of the enumerated grounds "was or will be at least one central reason for persecuting" him or her. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i).

To qualify for withholding of removal, the alien similarly must show that it is more likely than not that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)). Because the more-likely-than-not standard that applies to withholding of removal claims is more stringent than the well-founded-fear standard that applies to asylum claims, ineligibility for asylum generally precludes withholding of removal eligibility. Al Najjar, 257 F.3d at 1292-93.

## III.

Regarding asylum, substantial evidence supports the BIA's denial of relief. See Reyes-Sanchez, 369 F.3d at 1242; D-Muhumed, 388 F.3d at 817. As an initial matter, because the BIA's finding regarding the dearth of corroborative evidence of the Petitioners' claims was not the sort of clean credibility finding we require, we accept as true the evidence offered by the Petitioners, namely Eddy Guerra Cabrera's testimony. See Yang, 418 F.3d at 1201. Even assuming that Eddy Guerra Cabrera's claims are true, however, the Petitioners have not satisfied the nexus element of the asylum standard. See 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.

Nothing in the record compels a finding that the Petitioners were persecuted on account on their imputed political opinions. See Mendoza, 327 F.3d at 1287. The Petitioners did not establish that the police officers in question interpreted the complaints, filed by the Petitioners after receiving threatening telephone calls, as statements against the Guatemalan police and, therefore, robbed, assaulted, raped, or threatened to kill any of the Petitioners. Indeed, in their application, the Petitioners did not clearly establish that they were persecuted after filing complaints. Rather, the Petitioners at most established that Eddy Guerra Cabrera's ex-wife enlisted the aid of her "lover" and her family members, who had ties to, or were, police and army officers, to persecute the Petitioners because she was angry with Eddy Guerra Cabrera. Indeed, Eddy Guerra Cabrera admitted at the merits

9

hearing that, but for the problems he experienced with his ex-wife, the Petitioners would not have been persecuted. Eddy Guerra Cabrera did not testify that his problems with his ex-wife had anything to do with his political opinion, imputed or otherwise. Therefore, the Petitioners failed to establish that they were persecuted on account of a specified ground and thereby failed to establish asylum eligibility. See 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.

Regarding withholding of removal, because the Petitioners failed to satisfy their burden for proving asylum eligibility, they necessarily fail to meet their more-stringent burden for proving withholding-of-removal eligibility. See Al Najjar, 257 F.3d at 1292-93. Regarding relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), the BIA found that the Petitioners had abandoned any claim that the IJ erred in denying CAT relief. On appeal, the Petitioners do not reference this finding. Therefore, the Petitioners abandoned such an argument. See Sepulveda, 401 F.3d at 1228 n.2. Accordingly, we deny the petition.

**PETITION DENIED.**