[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-13574
Non-Argument Calendar
_____

Agency Nos. A96-283-810,
A96-283-811

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 14, 2009
THOMAS K. KAHN
CLERK

FLAURE MARIE ATHANIE FEQUIERE CLERVEAU,
THAISHA FLORCY FEQUIERE,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 14, 2009)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Flaure Marie Athanie Fequiere Clerveau and her daughter, Thaisha Florcy Fequiere, natives and citizens of Haiti, seek, through counsel, review of the order by the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") order of removal and denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). For the reasons set forth below, we dismiss in part and deny in part the petition.

## I. Background

Fequiere entered the United States at an unknown place on July 22, 2000, as a non-immigrant visitor for pleasure, with authorization to remain until January 21, 2001. Clerveau entered the United States at Miami on March 13, 2001, as a non-immigrant visitor for pleasure, with authorization to remain until September 12, 2001. On March 3, 2004, Clerveau submitted an application, on behalf of herself and her daughter, for asylum, withholding of removal, and CAT relief, on the ground that she had been or would be persecuted on account of her political opinion. Specifically, Clerveau alleged that, while she was not a member of a political party or group, she had spoken out against then-President Jean-Bertrand Aristide and his Fanmi Lavalas party ("Lavalas") and, as a result, had been persecuted by Lavalas supporters. Clerveau also submitted the U.S. Department of

2

State Haiti Country Report on Human Rights Practices for 2005, which stated that Lavalas supporters were responsible for violence and killings even after Aristide was forced from office in February 2004. After an asylum hearing on these allegations, the IJ denied Clerveau's application. The IJ reasoned that (1) Clerveau was not credible, given inconsistencies between her written application and hearing testimony and the general implausibility of her story; (2) Clerveau's asylum application was untimely, and she had failed to provide justification for her late filing; and (3) Clerveau otherwise could not satisfy her burdens for withholding of removal and CAT relief. Clerveau appealed the IJ's decision to the BIA, challenging the adverse credibility finding. The BIA affirmed, echoing the IJ's reasoning.

## II. Asylum

We review our subject-matter jurisdiction de novo. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). An alien can apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). An application filed after one year may also be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating

3

to the delay in filing an application within the period specified . . . ." INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D). Nevertheless, § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." 8 U.S.C. § 1158(a)(3); Alim v. Gonzales, 446 F.3d 1239, 1253 (11th Cir. 2006) (holding that, because IJ denied asylum application as untimely, this Court lacked subject-matter jurisdiction to review the final order of removal as it pertained to the asylum claim). This jurisdiction stripping provision remains in effect after the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (2005). Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005).[1]

Both the IJ and the BIA found that Clerveau's asylum application was untimely and that she failed to establish changed or extraordinary circumstances that excused the untimely application. Accordingly, we lack jurisdiction to consider Clerveau's asylum arguments on appeal and dismiss the petition in this respect. See Alim, 446 F.3d at 1253.

### III. Withholding of Removal and CAT Relief

When the BIA affirms the IJ's conclusion but issues a separate decision, we

---

[1] Though Clerveau's case commenced before the enactment of the REAL ID Act of 2005, the jurisdictional provisions do apply to his case. See REAL ID Act of 2005, § 106(b), Pub. L. No. 109-13, 119 Stat. 231, 311 (stating that the jurisdictional provisions of § 1252(a)(2)(D) "shall take effect upon the date of the enactment" and shall apply to any case "in which the final administrative order of removal . . . was issued before, on, or after the date of the enactment").

4

review the BIA's decision, "except to the extent that [the BIA] expressly adopts the IJ's opinion." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004) (quotation omitted). "Insofar as the [BIA] adopts the IJ's reasoning, [this Court] review[s] the IJ's decision as well." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA both cited the IJ's reasoning and provided its own reasoning; such that we will review both the IJ's and BIA's opinions. Id. We have held that, in reviewing the IJ's or BIA's opinion, we will not review any arguments not raised on appeal. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned").

We review the IJ's credibility determinations under a substantial evidence standard, which provides that "the IJ's decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006). If an alien's testimony is credible, it may be sufficient, without corroboration, to satisfy his burden of proof in establishing his eligibility for relief from removal. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005); 8 C.F.R. §§ 208.13(a), 208.16(b). "Conversely, an adverse credibility determination alone may be sufficient to support the denial of [relief], so long as the alien fails to produce corroborating evidence. See Forgue, 401 F.3d at 1287. If "the applicant produces other evidence

5

of persecution, whatever form it may take, the [BIA] must consider that evidence, and it is not sufficient for the [BIA] to rely solely on an adverse credibility determination in those instances." See id. If the IJ explicitly determines that the alien lacks credibility, he must offer "specific, cogent reasons" for the finding. Id. Upon such reasoning, the burden shifts to the alien to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence. Id.

An applicant for withholding of removal and CAT relief is not subject to the one-year time limitation placed on asylum applicants under INA § 208(a)(2)(B). See 8 C.F.R.§ 208.16(b), (c) (describing the standards for awarding withholding of removal and CAT relief and not mentioning a one-year, or other, deadline for seeking such relief). An alien seeking withholding of removal under the INA must show that it is more likely than not that his life or freedom would be threatened on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.16(b). The alien can satisfy this burden by demonstrating that he suffered past persecution on account of a protected ground, which gives rise to a rebuttable presumption that his life or freedom would be threatened in the future if he were to return. 8 C.F.R. § 208.16(b)(1). An alien seeking CAT relief must show that it is more likely than not that he would be tortured if returned to the proposed country of removal. Reyes-Sanchez, 369 F.3d

6

at 1242. The alien also must demonstrate that the feared torture would be by the government or with the government's awareness and failure to intervene. Id. The CAT defines torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

See 8 C.F.R. § 208.18(a)(1). To constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. 8 C.F.R. § 208.18(a)(5).

Substantial evidence supports the IJ's and BIA's adverse credibility findings. See Chen, 463 F.3d at 1231. The IJ and BIA both cited specific reasons for their adverse credibility findings, and the record supports these findings. See Forgue, 401 F.3d at 1287. Specifically, the record demonstrates, and the IJ cited, the following. Clerveau first attempted to flee Haiti on March 2, 2001, but could not because of airplane malfunctions. On March 3, 2001, while pregnant, Clerveau attended an anti-Lavalas meeting. On the way home, she was ambushed by four men, one of whom brandished a gun. The fact that Clerveau attended a meeting after already concluding that she must flee Haiti suggests that she did not fear the

7

Lavalas supporters as much as she later claimed. Also, Clerveau stated in her application that she gave at least one speech denouncing Aristide and Lavalas, but later testified that she was not an official speaker, but merely attended a "women's meeting" and told the other attendees that they must work together to ensure that Aristide was not re-elected in the looming elections. Clerveau also stated in her application that she had three friends who were police men and that one of these friends saved her life on one occasion, but later testified that she did not report any of the alleged incidents of persecution to police because they all were corrupt. Clerveau likewise testified both that she opposed Aristide and Lavalas because she did not have enough food to eat, but that she traveled to the United States twice in less than a year. These inconsistencies show that the adverse credibility determinations were supported by substantial evidence.

Although neither the IJ or BIA cited as much, the record also demonstrates the following. In 2000, Clerveau traveled with her daughter to the United States, dropped off her daughter, and returned to Haiti with the "plan[] to return to the United states to reunite with [her daughter] at a later date." Clerveau first attended an anti-Lavalas meeting and first was persecuted in January 2001. The fact that Clerveau devised a plan to return to the United States long before any of the alleged acts of persecution occurred undermines her claims that these alleged acts were her inspiration for fleeing.

8

We note that Clerveau's appellate argument that the IJ and BIA impermissibly substituted personal opinion for fact and relied on Clerveau's inability to explain whether other meeting attendees were persecuted is without merit, as the record demonstrates that the IJ's and BIA's credibility determinations were rooted in the above facts that derive from the record and are separate from any consideration regarding unrelated parties. Also, although it appears the IJ and BIA both relied solely on their adverse credibility findings in denying relief, and failed to consider the U.S. Department of State Haiti Country Report on Human Rights Practices for 2005 submitted by Clerveau, Clerveau did not mention this oversight on appeal and has, therefore, abandoned any argument stemming from it, such that we need not consider the matter. See Forgue, 401 F.3d at 1287; Sepulveda, 401 F.3d at 1228 n.2. Thus, the IJ's and BIA's adverse credibility determinations were sufficient to support their denials of withholding of removal and CAT relief. See id. Accordingly, we deny the petition in this respect.

**DISMISSED IN PART; DENIED IN PART.**