[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 16, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13609
Non-Argument Calendar

_____

Agency No. A96-292-634

JORGE ALFREDO TORRES,
MARIA MAGDALENA BELTRAN,
LAURA NATALIA TORRES,
LEONARDO TORRES,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 16, 2007)**

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

Petitioners Jorge Torres, Beltre Maria Magdalena, Leonardo Torres, and Laura Torres (collectively "Torres"),[1] petition for review of the BIA's final order summarily affirming the IJ's denial of their withholding of removal claim under the United Nations Convention Against Torture. On appeal, Torres contends that the IJ erred in denying his request for CAT relief after finding that the Colombian government did not acquiesce in his torture.[2] Specifically, Torres argues that where "a government knows that a private group is torturing people and is unable or unwilling to protect the victims, the government has 'acquiesced' in that torture." Torres concedes that he is not entitled to relief under Eleventh Circuit precedent. However, he requests that we adopt the Ninth Circuit's holding in Zheng v. Ashcroft, 332 F.3d 1186 (9th Cir. 2003), and find that CAT petitioners must only prove that public officials are aware of the torture and fail to intervene to prevent the torture. Id. 1194.

When the BIA does not render its own opinion, but instead adopts the IJ's opinion, we review the IJ's decision. D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). We review de novo legal determinations, and

---

[1] Beltre Maria Magdalena, Leonardo Torres and Laura Torres are the wife, son and daughter respectively of Jorge Torres.

[2] We only consider Torres' CAT claim as he withdrew his asylum application and has abandoned his withholding of removal claim by failing to raise it on appeal here. See Huang v. United States Att'y Gen., 429 F.3d 1002, 1007 n.2 (11th Cir. 2005).

we review factual determinations under the substantial evidence test, affirming the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 817–18. "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

To qualify for CAT relief, the applicant must establish that it is "more likely than not" that he would be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment . . . ." Id. § 208.18(a)(2). To constitute torture, the actor must specifically intend to cause severe mental or physical pain; an act causing unanticipated or unintended pain is not torture. Id. § 208.18(a)(5). Additionally, the torture must be inflicted by a government official or at the instigation or with the acquiescence of a government official or someone acting in an official capacity. Id. § 208.18(a)(1).

CAT relief carries a higher legal standard than asylum, and that standard is very difficult to meet. Al Najjar v. Ashcroft, 257 F.3d 1262, 1303 (11th Cir. 2001) (noting that the "more likely than not" CAT standard is harder to meet than the "well-founded fear of persecution" standard applicable to asylum claims). Evidence of past torture is relevant in determining whether the applicant is "more

3

likely than not" to face future torture if removed. 8 C.F.R. § 208.16(c)(3)(i). We have held that beating an applicant with fists, sticks and belts did not rise to the level of torture. Cadet v. Bulger, 377 F.3d 1173, 1194–95 (11th Cir. 2004). We have also determined that a pattern of threatening phone calls is insufficient to establish torture. Sanchez v. United States Att'y Gen., 392 F.3d 434, 436, 438 (11th Cir. 2004).

Initially we note that, on appeal, Torres makes no argument about the IJ's finding that he failed to prove that it is more likely than not that he would be tortured upon returning to Colombia. Issues not argued on appeal are abandoned. Huang v. United States Att'y Gen., 429 F.3d 1002, 1007 n.2 (11th Cir. 2005). Therefore, Torres has abandoned this issue, and the BIA's denial of his CAT claim can be affirmed on this basis. Nevertheless, we also find that the IJ's decision to deny Torres' CAT claim was clearly supported by substantial evidence because he failed to establish either "torture" or "acquiescence" by the Colombian government.

First, the IJ properly determined that Torres failed to prove that he was tortured or would be tortured, within the CAT meaning of the term, if removed to Colombia. Torres testified that he was hit and insulted by members of the FARC, was briefly kidnapped, and had received threatening phone calls. However, none

4

of this amounted to torture under the applicable regulations, which require "an extreme form of cruel and inhuman treatment." See 8 C.F.R. § 208.18(a)(1), (2). Additionally, Torres testified that he was not harmed by the FARC when he was in Colombia from March 2001 through August 2001, and, although his parents and brother have remained in Colombia, they have not been harmed in any way by the FARC. Because Torres did not present evidence that he had previously been tortured by the FARC, and because neither he nor any family members was physically harmed after the kidnapping incident, substantial evidence supports the IJ's determination that Torres failed to prove that it is more likely than not that he would be tortured if removed to Colombia.

Second, the IJ's determination that Torres failed to prove that the Colombian government acquiesced in the actions of the FARC is supported by substantial evidence. For the CAT to apply, torture must occur "with the consent or acquiescence of a public official or other person acting in an official capacity." Id. § 208.18(a)(1). This requires "that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." Id. § 208.18(a)(7). We have affirmed the BIA's holding that a government does not "acquiesce" to torture where the government "actively, albeit not entirely successfully, combats" the illegal activities. Reyes-Sanchez v. United States Att'y Gen., 369 F.3d 1239,

5

1243 (11th Cir. 2004) (quotation marks omitted).  In determining whether a government is combating the actions of a private actor—and not acquiescing—the IJ may "rely heavily" on any reports prepared by the United States Department of State that are admitted into evidence.  Id.

Torres admits that he never told the Colombian authorities about the kidnapping, and we find no evidence in the record indicating that public officials were otherwise aware of the FARC's actions with regard to Torres.  Furthermore, the IJ pointed out that the United States Department of State issued a report, which was admitted into evidence, describing the efforts of the Colombian government to combat the FARC's illegal activities.  Specifically, the report indicated that the government has an elite anti-kidnapping unit.  The IJ properly relied on this report to show that the Colombian government is actively trying to combat the FARC's illegal actions, including kidnapping.  Consequently, the IJ did not err in finding that the Colombian government had not acquiesced to the FARC's actions.  For these reasons Torres' petition is denied.[3]

**PETITIONS FOR REVIEW ARE DENIED.**

---

[3] We need not reach the question of whether we are foreclosed by existing circuit precedent from following the Ninth Circuit's holding in Zheng, 332 F.3d 1186, because the record in this case clearly indicates that the Colombian government is not willfully blind to the illegal activities of the FARC.  Instead, the Colombian government is actively expending time and resources to curb illegal FARC activities.  See Reyes-Sanchez, 369 F.3d at 1242 n.6 (declining to adopt the holding in Zheng where it was not necessary to resolve the issue).