[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-16805
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A029-976-356,
A098-727-878

DOMINGO TERCERO AGUILAR,
ISAIAS ALEJANDRO TERCERO TERCERO,
FRANCISCA TERCERO RAMIREZ,
MYNOR RANFERY TERCERO TERCERO,
JORGE RIGOBERTO TERCERO TERCERO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 2, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Domingo Tercero Aguilar, his wife, Francisca Tercero Ramirez, and their children, Isaias Alejandro Tercero Tercero, Mynor Ranfery Tercero Tercero, and Jorge Rigoberto Tercero Tercero (collectively, "Petitioners"), all Mayans and natives and citizens of Guatemala, appeal the Board of Immigration Appeals ("BIA") order of removal and denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). For the reasons set forth below, we deny the petition.

## I.

In his application for asylum, withholding of removal, and CAT relief, Domingo argued that he was a poor, uneducated farmer who would be killed by Guatemalan Army soldiers on suspicion of being a communist or guerilla. At his asylum hearing, Domingo testified that, in 1990, soldiers moved into his town. They accused everyone of being guerillas, and no one could protest because they had authority to kill anyone. They began to rape young women. They also began to molest and try to rape Francisca. Domingo could not speak up to them because they would "use [their] arms" and "hurt" him. So, on approximately November 15, 1990, he went to the chief of the Guatemalan Army to report the soldiers' behavior and actions toward Francisca. The chief punished the soldiers. Specifically, the

2

chief had the soldiers' hands tied behind their backs and made the soldiers stand in a nearby river. Because, at the time, it was winter, the water was freezing and it was very hard for the soldiers to breathe. This angered the soldiers, and they began to threaten Domingo with death. One day, they went to his church in search of him. An acquaintance called him and warned him that he should not come to church and should flee his home. Accordingly, he fled to the United States. Although he did not think the soldiers in question remained in the army, he was afraid they would kill him if he returned to Guatemala.

An immigration judge ("IJ") denied Petitioners' application. The IJ reasoned that Domingo had not demonstrated that he had been persecuted or that whatever actions the soldiers in question took toward him were based on a protected ground. Moreover, when Domingo complained of these actions, the soldiers were punished. Domingo also had not demonstrated that he had a well-founded fear of future persecution, as the problems described occurred more than 17 years before, such that it was doubtful anyone was continuing to pursue him. Because Domingo could not satisfy his burden for proving asylum eligibility, he could not satisfy his higher burden for proving withholding-of-removal eligibility.

Petitioners appealed to the BIA. They argued that Domingo and Francisca suffered part persecution because soldiers came into their village and "did whatever they wanted," including raping women. Soldiers tried to rape Francisca.

3

These actions were based on Domingo's and Francisca's ethnicity, as the U.S. Department of State Guatemala Country Report on Human Rights Practices for 2006 demonstrated that Mayans and other minorities suffered routine discrimination. Also, there was a clear probability that they would be persecuted in the future.

The BIA dismissed Petitioners' appeal. The BIA reasoned that the IJ correctly found that Domingo had not demonstrated that he had been persecuted on account of his politics or that he had a well-founded fear of future persecution, as he fled Guatemala more than 18 years before. Also, Domingo had not demonstrated that any discrimination he might suffer in the future would rise to the level of persecution. Likewise, the IJ correctly found that Domingo had not demonstrated that it was more likely than not that he would be tortured.

## II.

When the BIA affirms the IJ's decision, but issues a separate opinion, as here, we review the BIA's opinion "except to the extent that [the BIA] expressly adopts the IJ's opinion." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). When reviewing the BIA's opinion, we review legal determinations de novo and factual determinations under the "substantial evidence test." See Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (regarding denials of relief). Under this test, which is "highly deferential," we

4

"must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Al Najjar, 257 F.3d at 1283-84 (quotation omitted).  In order to reverse a finding of fact, "we must find that the record not only supports reversal, but compels it."  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).  We will not consider arguments presented before the IJ or BIA but not discussed on appeal.  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned").

An alien who arrives in or is present in the United States may apply for, inter alia, asylum and withholding of removal.  INA §§ 208(a)(1), 241, 8 U.S.C. §§ 1158(a)(1), 1231(b)(3)(A), 8 C.F.R. § 208.16(c).  To qualify for asylum, the alien must prove that he is a refugee.  Al Najjar, 257 F.3d at 1284 (citing 8 U.S.C. § 1101(a)(42)(A)).  A refugee is defined in the INA as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

To establish refugee status, the alien must establish, through specific, detailed facts, (1) his past persecution on account of a protected ground, or (2) his

5

"well-founded fear" that he will be persecuted in the future on account of a protected ground. 8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287. A well-founded fear of future persecution may be established by showing (1) past persecution that creates a rebuttable presumption of a well-founded fear of future persecution based on a protected ground, (2) a reasonable possibility of personal persecution based on a protected ground, or (3) a pattern or practice in the subject country of persecuting a group of similarly situated people, to which the petitioner belonged, on account of a protected ground. 8 C.F.R § 208.13(b)(1), (b)(2)(i) and (iii). In establishing a pattern or practice of persecution, the alien need not prove that he would be singled out for persecution if he demonstrates (1) a pattern or practice of persecution of similarly situated individuals and (2) that his inclusion in that group of individuals makes his fear of persecution reasonable. See 8 C.F.R. § 208.13(b)(2)(iii). In establishing any of the above, the alien must demonstrate that his fear "is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.

While the INA does not expressly define "persecution," we have recognized that it is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that [m]ere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (quotations omitted) (concluding that "menacing" telephone calls and threats to the alien and her brother did not

6

constitute past persecution). Also, with regard to asylum claims based on political opinion, the Supreme Court has held that the persecution alleged must be on account of the "victim's political opinion, not the persecutor's." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 482-83, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992) (emphasis in original); Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437-38 (11th Cir. 2004). To qualify for withholding of removal, the alien similarly must show that it is more likely than not that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)). Because this standard is more stringent than the well-founded-fear standard that applies to asylum claims, ineligibility for asylum generally precludes withholding of removal eligibility. Al Najjar, 257 F.3d at 1292-93.

### III.

Regarding asylum, substantial evidence supports the BIA's denial of asylum. See id. at 1283-84. Domingo did not establish that he suffered past persecution. See 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. Domingo testified that the soldiers attempted to rape his wife, but failed to provide specific, detailed facts on the soldiers' exact actions toward his wife. See id.. Domingo also testified that the soldiers threatened to kill him and looked for him at his church, ostensibly to carry out these threats, but this incident of harassment does not constitute

7

persecution.  See Sepulveda, 401 F.3d at 1231.

Also, Domingo did not establish that whatever problems he suffered were on account of a protected ground.  See 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.  Based on his testimony, it appears that the soldiers' actions toward him simply were in retaliation for his reporting their actions to the chief of the army.  Although he suggested that the soldiers raped women because they believed the women to be communists or guerillas, he specifically testified that the soldiers threatened to kill him because he reported their actions to the chief of the Guatemalan Army and the chief, in turn, punished the soldiers.  His testimony gave no indication that the soldiers interpreted his reporting their actions to the chief as an expression of his political opinion.  See Elias-Zacarias, 502 U.S. at 482-83, 112 S.Ct. at 816; Sanchez, 392 F.3d at 437-38.

Likewise, Domingo did not establish that he had a well-founded fear of future persecution.  See 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.  Because the problems described occurred more than 18 years ago, and Domingo testified that he does not believe the soldiers in question  remain in the army, Domingo's claimed fear of being harmed should he return to Guatemala does not appear objectively reasonable.  See 8 C.F.R § 208.13(b)(1), (b)(2)(i) and (iii); Al Najjar, 257 F.3d at 1289; (AR at 121-22).  Domingo failed to explain why the soldiers  would continue pursuing him because of ills they suffered so many years

8

ago. Domingo's claim that the soldiers, or others, have a pattern or practice of persecuting Mayans also is not supported by the evidence. While the applicable Country Report indicates that Mayans suffer discrimination and inequality in educational, and other, opportunities, such discrimination does not rise to the level of persecution. See Sepulveda, 401 F.3d at 1231. The Country Report did not indicate that Mayans suffer any violence or other physical harm.

Also, regarding withholding of removal, substantial evidence supports the BIA's denial of withholding of removal. See Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)). Because Domingo could not satisfy his burden of proving asylum eligibility, he necessarily cannot satisfy his burden of proving withholding-of-removal eligibility. See Al Najjar, 257 F.3d at 1292-93. Finally, regarding CAT relief, Petitioners abandoned any argument that the IJ and BIA erred in denying CAT relief, as they failed to provide any argument on this matter in their brief on appeal. See generally Sepulveda, 401 F.3d at 1228 n.2. Accordingly, we deny the petition.

**PETITION DENIED.**