[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11869
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 5, 2009
THOMAS K. KAHN
CLERK

Agency No. A079-453-719

RAMADAN LIKOLLARI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 5, 2009)

Before MARCUS, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Ramadan Likollari petitions through counsel for review of the Board of

Immigration Review's ("BIA") decision denying his motion to reopen his removal

proceedings. On appeal, Likollari argues that: (1) the BIA erred in finding that his

motion to reopen was time-barred because newly discovered evidence established changed country conditions in Albania; and (2) the newly discovered evidence established his prima facie eligibility for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). After careful review, we deny the petition.

We review de novo whether we have subject-matter jurisdiction. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). We lack jurisdiction to review claims not raised before the BIA. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006). We review the BIA's denial of a motion to reopen for abuse of discretion. Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). Our review is limited to determining whether the BIA's exercise of discretion was arbitrary or capricious. Id.

Motions to reopen removal proceedings are disfavored. INS v. Doherty, 502 U.S. 314, 323 (1992). Generally, an alien who is subject to a final order of removal must file a motion to reopen within 90 days of the date when the removal order became final. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). An exception to the 90-day time limit is when an alien presents material evidence of changed country conditions that could not have been discovered or presented at the previous asylum hearing. 8 C.F.R. § 1003.2(c)(3)(ii); Zhang v. U.S. Att'y Gen.,

2

572 F.3d 1316, 1319 (11th Cir. 2009). When an alien does not establish an exception to the 90-day time period, the BIA does not abuse its discretion in denying the untimely motion to reopen. Abdi, 430 F.3d at 1150. Additionally, the BIA may deny a motion to reopen even if the alien establishes a prima facia case for relief. 8 C.F.R. § 1003.2(a).

In this case, the BIA did not abuse its discretion in denying Likollari's motion to reopen.[1] As the record shows, the majority of the evidence presented could have been presented during his asylum proceedings, and the remainder of the evidence failed to establish changed country conditions. First, the affidavit of Likollari's attorney, Marina Meyerovich, could not be considered evidence of changed circumstances because an attorney's arguments are not evidence. Matter of Ramirez-Sanchez, 17 I. & N. Dec. 503, 506 (BIA 1980) (holding that an attorney's arguments are not evidence). Similarly, Likollari's sister's and parents' affidavits both simply described events that occurred prior to Likollari's asylum proceedings, and thus, the evidence could have been discovered and presented

---

[1] We disagree, however, with the government's claim that Likollari failed to exhaust his administrative remedies by not raising his § 1003.2(c)(3) argument before the BIA, as Likollari argued in his motion to reopen that his removal proceedings should be reopened under § 1003.2(c) because he had new evidence that established deteriorating country conditions in Albania. Further, Likollari did not abandon his changed country conditions argument on appeal; he expressly argues that the BIA abused its discretion in denying his motion because he presented new evidence establishing changed country conditions.

before the IJ during Likollari's asylum proceedings. 8 C.F.R. § 1003.2(c)(1); Zhang, 572 F.3d at 1319.

Additionally, with the exception of one paragraph, Likollari's affidavit merely describes his situation in Albania prior to leaving the country. In the one paragraph about conditions in Albania since he left, Likollari says that there continue to be reports of threats to political activists and increasingly dangerous country conditions, and he heard that his uncle was murdered by Socialists in 2007. This paragraph, however, fails to establish changed country conditions because: (1) a continuation of threats means that the threats were occurring before he left; and (2) the documentary evidence Likollari submitted in support of his asylum application provided that political violence was occurring prior to Likollari's asylum hearing, indicating that his uncle's political murder was not a change in country conditions. Likollari v. U.S. Att'y Gen., 178 F. App'x 904, 907 (11th Cir. 2006) (unpublished).

As with Likollari's affidavit, the majority of the events and conditions discussed in the affidavit of Prenk Camaj -- an alleged expert in the country conditions of Albania and other Balkan countries -- could have been discovered and presented during Likollari's asylum proceedings. 8 C.F.R. § 1003.2(c)(1); Zhang, 572 F.3d at 1319. With regard to the events that occurred after Likollari's asylum proceedings became final in 2005, the evidence is either not material or

4

fails to demonstrate a change in country conditions. Specifically, Camaj's discussion of blood feuds is not material because Likollari claims he will be harmed due to his participation with the Democratic Party, not because of a blood feud. Additionally, while Camaj describes the country conditions in Albania since 2005 as chaotic and discusses several incidences of politically motivated disappearances and violence, Camaj's own affidavit confirms that prior to 2005 the country conditions were chaotic and that politically motivated disappearances and violence were just as prevalent. Further, in addition to Camaj's own statements demonstrating that conditions have not changed since Likollari's asylum proceeding, as noted above, the documentary evidence that Likollari submitted during his original asylum proceedings demonstrates that an unstable political climate, political violence, and excessive force by police officers is not a new development in Albania. See Likollari, 178 F. App'x at 907.

Moreover, Camaj's affidavit was in direct conflict with the 2007 Country Report's assessment that there were no political prisoners or politically motivated disappearances. Thus, it was not an abuse of discretion for the BIA to find Camaj's statements about the current country conditions unpersuasive to the extent that the statements conflicted with the Country Reports because this Court has held that the BIA may "rely heavily" on Country Reports. Reyes-Sanchez v. U.S. Att'y

5

<u>Gen.</u>, 369 F.3d 1239, 1243 (11th Cir. 2004) (holding that the BIA is "entitled to rely heavily" on State Department reports).

The BIA, therefore, did not abuse its discretion in denying Likollari's motion to reopen as untimely because Likollari filed the motion more than 90 days after the BIA's September 2005 order and Likollari failed to satisfy § 1003.2(c)(3)(ii)'s exception due to the fact that the evidence was immaterial, was previously available, or failed to establish changed country conditions. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2), (3)(ii); <u>Zhang</u>, 572 F.3d at 1319. Because Likollari's motion to reopen was untimely, it was not an abuse of discretion for the district court to deny the motion without considering whether Likollari was <u>prima facie</u> eligible for asylum, withholding of removal, or CAT relief. <u>See</u> <u>Abdi</u>, 430 F.3d at 1150.

**PETITION DENIED.**