[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14571
Non-Argument Calendar
_____

Agency No. A089-941-599

JINXIAN LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 5, 2013)

Before TJOFLAT, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Jinxian Lin, a Chinese national, petitions for review of the Board of

Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ")

denial of asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  Lin maintains that she was persecuted based on her Christian religion and her attendance at a small underground church in China that consisted of approximately ten people.  Chinese officials interrupted the church meetings twice, and, after the first interruption, she was detained for one day, slapped once, and fined.  After the second disruption of the church gathering, Lin escaped, although other congregants were arrested.  Lin eventually fled to the United States.

Lin argues that the agency erred by concluding that she had not established past persecution because her mistreatment by the Chinese officials rose to the level of persecution.  Lin also contends that the BIA and IJ erred because she established a well-founded fear of future persecution.  Finally, she argues that the agency's conclusion that she could relocate within China was error.  After careful review, we deny the petition.

## I.

Because the BIA expressly adopted the IJ's opinion, we review both the IJ's and the BIA's opinions.  *See Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).  We review legal determinations *de novo*, but we review administrative fact findings for substantial evidence, a highly deferential standard.  *Ayala v. U.S.*

2

*Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).  Under the substantial evidence test, we will affirm the IJ's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.*  We may reverse only when doing so is compelled by the record, and we may not reweigh the evidence from scratch.  *Id.*  The substantial evidence test requires that we view the evidence in the record in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision.  *Seck*, 663 F.3d at 1364.

An alien who is present in the United States may apply for asylum. Immigration and Nationality Act ("INA") § 208(a)(1), 8 U.S.C. § 1158(a)(1).  The government has the discretion to grant asylum if the alien establishes that she is a "refugee."  INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A).  A refugee is a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [her country of nationality] because of persecution or a well-founded fear of persecution on account of . . . religion."  INA § 101(a)(42), 8 U.S.C. § 1101(a)(42).

Generally, an applicant for asylum must establish either (1) past persecution on account of a protected ground, or (2) a well-founded fear of future persecution on account of a protected ground.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230-31 (11th Cir. 2005).  Persecution is an extreme concept that requires more than a few isolated incidents of verbal harassment or intimidation, and mere

harassment does not constitute persecution. *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290-91 (11th Cir. 2006) (holding that the record did not compel a conclusion that the petitioner experienced past persecution based on a five-day detention during which he was forced to watch anti-Falun Gong reeducation videos, to stand in the sun for two hours, and to sign a pledge to no longer practice Falun Gong). We evaluate the harm that a petitioner suffered cumulatively and by considering the totality of the circumstances on a case-by-case basis. *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235-36 (11th Cir. 2013).

For example, in *Djonda v. United States Attorney General*, 514 F.3d 1168, 1171, 1174 (11th Cir. 2008), we concluded that a beating in which the petitioner suffered only scratches and bruises during a 36-hour detention combined with threats of a future arrest did not compel the conclusion that the petitioner had suffered past persecution. Additionally, in *Kazemzadeh v. United States Attorney General*, 577 F.3d 1341, 1352-53 (11th Cir. 2009), we held that a five-hour interrogation and beating, coupled with the petitioner being detained for four days, was not enough to compel the conclusion that the petitioner suffered persecution as opposed to harassment.

By contrast, in *Shi*, Chinese officials interrupted a Christian church service in the petitioner's father's home, arrested the petitioner, his father, and other worshippers, and confiscated their Bibles. *Id.* at 1232. The officials detained the

4

petitioner for seven days and interrogated him. *Id.* at 1233. Shi was slapped, told that he had been brainwashed, and eventually handcuffed to an iron bar overnight in the rain, which left him ill. *Id.* We granted Shi's petition for review, holding that his case was "extreme enough to compel a finding that Shi suffered past persecution on account of practicing his religion in China." *Id.* at 1236. We emphasized: (1) the interruption of a private church service and the attempts to coerce Shi to abandon his religious convictions; (2) the illegality of the meeting itself; (3) the confiscation of the group's Bibles; (4) Shi's weeklong detention; and (5) "the unusual nature of the authorities' efforts to suppress Shi's religious practice," including his being handcuffed to an iron bar. *Id.* at 1236-38. We distinguished the case from *Zheng* and *Djonda* because *Shi* involved a longer period of detention, the interruption of a private church service and confiscation of religious materials rendered the persecution particularly invidious, and handcuffing an individual to an iron bar overnight in the rain was a "singularly cruel" tactic. *Id.* at 1239.

An asylum applicant is required to present specific and credible evidence in support of her application. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008). So long as reasoned consideration is given to the petition and adequate findings are made, we do not require the BIA and the IJ to discuss each piece of evidence that the petitioner presented. *Seck*, 663 F.3d at 1364, 1367. The

5

agency, moreover, is entitled to discount unauthenticated documents, *see Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1202 n.3 (11th Cir. 2005), and may rely heavily on the US State Department reports, *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004).

To qualify for withholding of removal, an applicant must establish that her life or freedom would be threatened in the country of origin on account of a statutorily protected ground. INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The applicant must demonstrate that she would "more likely than not" be persecuted upon being returned to her country of origin. *Sepulveda*, 401 F.3d at 1232. An applicant who is unable to satisfy the standard for asylum generally will be unable to meet the more stringent standard for withholding of removal. *Id.* at 1232-33.

Here, substantial evidence supported the agency's conclusion that Lin did not establish past persecution in China on the basis of her Christian beliefs because Lin's experiences did not rise to the level of persecution. *See Kazemzadeh*, 577 F.3d at 1352-53; *Djonda*, 514 F.3d at 1171, 1174; *Zheng*, 451 F.3d at 1290-91. The facts here are more akin to the harassment in *Zheng*, *Djonda*, and *Kazemzadeh* as opposed to the persecution in *Shi* and do "not *compel* the conclusion that [Lin] experienced past persecution." *See Zheng*, 451 F.3d at 1290. Lin's testimony that she had been detained for one day and one night and had been slapped on one

6

occasion, and that she was then released after paying a fine, does not amount to persecution under our prior case law.

## II.

Where an asylum applicant does not demonstrate past persecution, she may nevertheless obtain relief if she establishes a well-founded fear of future persecution. *De Santamaria*, 525 F.3d at 1007. An asylum applicant must demonstrate that there is "a reasonable possibility" of persecution if the applicant returned to her country of origin. *Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 965 (11th Cir. 2011). The applicant must prove that she has "(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *De Santamaria*, 525 F.3d at 1007. Generally, an applicant can fulfill the subjective prong of this test by providing credible testimony that she genuinely fears persecution. *Id.* The objective prong requires that the applicant establish that she "has a good reason to fear future persecution." *Id.* (quotation omitted).

Under the relevant regulations, even if an asylum applicant establishes that she is a refugee, the agency may deny asylum if the applicant could avoid future persecution by relocating to another part of her country of nationality and it would be reasonable to expect the applicant to do so. 8 C.F.R. § 1208.13(b)(1)(i)(B), (b)(2)(ii). If the alleged persecutor is the government, it is presumed that internal relocation would not be reasonable, unless the government establishes by a

7

preponderance of the evidence that it would be reasonable for the asylum applicant to relocate.  *Id.* § 1208.13(b)(3)(ii).

Even assuming *arguendo* that Lin established a well-founded fear of future persecution, substantial evidence supported the agency's conclusion that it would be reasonable for Lin to relocate within China.  The agency relied on the information in the State Department reports to conclude that it was unlikely that Lin would be persecuted if she returned to China, and the agency was entitled to heavily rely on such reports.  *See Reyes-Sanchez*, 369 F.3d at 1243.  The State Department report indicates that, *inter alia*, small churches that gathered to read and discuss the Bible were unlikely to be targeted by government officials and that, in various locations in China, small underground churches similar to the one that Lin attended were tolerated by the government.  Lin's testimony, which the IJ found "marginally credible," and her unauthenticated corroborating documents are not enough to compel reversal of the IJ's finding that it would be reasonable for Lin to relocate within China.[1]

---

[1]    The district court did not err by assigning her corroborating documents "very little weight" because we have held that unauthenticated documents cannot be depended on for their veracity.  *See Yang*, 418 F.3d at 1202 n.3; *see also Kazemzadeh*, 577 F.3d at 1353 ("The [BIA] was entitled to discount the evidence because the documents had not been authenticated.").

As Lin has failed to establish her entitlement to asylum, she cannot establish entitlement to withholding of removal.  *See Sepulveda*, 401 F.3d at 1232.[2]

### III.

Upon review of the record and consideration of the parties' briefs, we deny the petition.

**PETITION DENIED.**

---

[2]    Lin has insufficiently raised her claim for CAT relief on appeal, and thus we deem this issue waived.  However, even if we were to hold that this issue was properly raised, Lin has not established that the record compels reversal on the CAT claim because she has not established that "it is more likely than not that she will be subjected to pain and suffering at the hands or acquiescence of the government."  *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1145 (11th Cir. 2010).  The burden of proof to obtain CAT relief is higher than the burden for showing eligibility for asylum.  *Id.*