[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14004
Non-Argument Calendar

_____

Agency No. A093-373-611

AI SHU JIN,

Petitioner,

versus

US ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 18, 2013)

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Ai Shu Jin, proceeding pro se, seeks review of the Board of Immigration Appeals's ("BIA") final order affirming the immigration judge's ("IJ") denial of her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). After review, we dismiss in part and deny in part her petition for review.

## I. BACKGROUND

### A. Asylum Application

Jin is a native citizen of China who is ethnically Korean. In August 2003, Jin entered the United States.

More than four years later, in February 2008, Jin filed an application for asylum, withholding of removal, and CAT protection. Jin alleged she had been persecuted in China for attending an underground Christian church and aiding North Korean refugees.

In her application, Jin stated that she was arrested in February 2003 along with other church members. Jin was detained for two days, during which time she was interrogated once, and then was released after paying a fine. Jin's application did not describe any physical abuse during the February 2003 detention.

According to Jin's application, in April 2003, she and other church members were arrested again. This time, Jin was detained for two weeks, interrogated

2

several times, and during two of these interrogations, a policeman banged Jin's head against a wall, causing her to bleed and lose consciousness. After Jin's release in May 2003, neighborhood officials monitored her movements until she left China on July 31, 2003. Jin arrived in the United States on August 30, 2003.

## B.    Immigration Proceedings

In May 2008, the former Immigration and Naturalization Service served Jin with a notice to appear ("NTA"), charging her with removability under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled or who had arrived in the United States at any time or place other than designated by the Attorney General.

Also in May 2008, Jin attended an asylum interview accompanied by an interpreter, at which she described the religious persecution she suffered in China. According to the asylum interviewer's notes, Jin said she was detained for one day in February 2003 and did not state she was beaten during this detention. Regarding her April 2003 detention, Jin indicated that a police officer banged her head against a wall and another officer gave her a newspaper to stop the bleeding. At some point during the interrogation, she fell to the floor, hitting her head and losing consciousness.

At a July 2008 hearing, Jin, represented by counsel, admitted the NTA's allegations and conceded removability. At an October 2008 hearing, Jin conceded

3

that her asylum application was not filed within the required one-year period after arriving in the United States. Jin argued that her untimeliness should be excused based on extraordinary circumstances. Jin testified that she had not filed her asylum application sooner because a Mr. Fang at a Chinese agency in the United States led her to falsely believe that he would file the necessary paperwork. After she discovered in February 2007 that her application was never filed, she retained an attorney to represent her in November 2007 and filed suit against Mr. Fang.

Jin also testified about the alleged incidents of religious persecution, including her two arrests and detentions in February and April 2003. For the first time, Jin stated that during both detentions, a police officer banged her forehead against the wall. During cross-examination, the government asked Jin why she did not state in either her asylum application or her asylum interview that she had been beaten during her first February 2003 detention. Jin first responded that she may have been too nervous, but then she admitted that "[t]he first time . . . indeed I was not beaten."

In addition, Jin submitted various supporting documents, including letters from fellow members of the underground church and two of her brothers. Two letters from fellow church members stated that they were arrested along with Jin in April 2003. These two letters stated that Jin "was detained for more than half a month," "treated as a non-repent[ant] church member and manipulator who helped

numerous North Korean refugees," and "fined ten thousand Yuan before release."
After her release, Jin was "closely monitored by the government," had to "report to the police station every week" and "was unable to travel outside easily." None of the letters, however, mentioned Jin being harmed while in detention. During cross-examination, Jin suggested that the church members had not mentioned the beating because they were scared of the government and the police.

## C.    IJ's Decision

The IJ denied Jin all requested relief. As to asylum, the IJ concluded that Jin's application was not filed within the one-year period required by INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B) and that Jin had not shown exceptional circumstances to excuse her untimeliness pursuant to INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D). The IJ noted that Jin testified she realized in April 2007 that Mr. Fang had not filed her asylum application, but she nevertheless did not file her asylum application until February 2008. The IJ concluded that Jin's ten-month delay was too long and pretermitted her asylum application as untimely. See 8 C.F.R. § 1208.4(a)(5) (providing that extraordinary circumstances may excuse an untimely filing "as long as the alien filed the application within a reasonable period given those circumstances").

The IJ then found Jin not credible, noting a "huge discrepancy" in Jin's testimony about her first detention. The IJ noted that Jin gave very detailed and

5

distinct descriptions of each detention and beating, and only abandoned her claim of being beaten during the first detention when the government confronted her with her earlier statements in her application and asylum interview omitting any mention of a beating during the first detention. In addition, the IJ stressed that although Jin testified she went to the hospital for her injuries, she had not submitted any medical records or other evidence to corroborate her injuries.

The IJ also stated he was troubled by some of the letters from China, which appeared to be form letters that were either identical or extremely similar. In addition, although two of the letters claimed to be written by people who were arrested with Jin in April 2003, neither mentioned that Jin was beaten or injured. The IJ found not credible Jin's explanation that the letter writers did not want to put themselves in danger, given that they had already admitted in their letters to belonging to an underground church and to being questioned by authorities. Based on these "substantial discrepancies," the IJ found that Jin's testimony was not credible and she therefore failed to meet her burden of proof.

Alternatively, the IJ found that, even assuming Jin's asylum application was timely and her testimony was credible, the two detentions, the one-day detention in February 2003 with no beating and the April 2003 detention in which she suffered only a bump on the head, did not rise to the level of past persecution and would not support a well-founded fear of future persecution. The IJ also found that there was

6

no evidence Jin would be singled out for persecution if she returned to China and she had not made a claim that there was a pattern or practice of persecution. The IJ concluded that Jin failed to establish statutory eligibility for asylum, withholding of removal or CAT relief.

## D.    BIA Appeal

The BIA dismissed Jin's subsequent appeal. The BIA agreed with the IJ that Jin's asylum application was untimely and that Jin had not shown that she filed within a reasonable period after learning of Mr. Fang's failure to file. Therefore, the IJ had correctly denied Jin's asylum application as time-barred.

The BIA further determined that the IJ's adverse credibility finding was not clearly erroneous, as the IJ had noted substantial omissions and inconsistencies between Jin's testimony, her interview with the asylum officer, and her asylum application that were not sufficiently explained before the IJ or on appeal. Specifically, the BIA noted that Jin testified that she was beaten during her first arrest and detention, but did not mention the incident in her asylum application or her interview with the asylum officer, and her corroborating letters also did not mention that event. The BIA agreed with the IJ that Jin's explanation for why the letters omitted the beating—that the writers feared they would be harmed—was not plausible. The BIA also agreed that some of the letters were suspicious because of their extreme similarity. The BIA rejected Jin's claim that she was nervous when

she testified about the beating and concluded that Jin's purported nervousness did not sufficiently explain the inconsistency and, in any event, the IJ was not required to accept Jin's explanation where there were other reasonable inferences based on the evidence.

The BIA concluded that because Jin failed to show that she deserved an exception to the one year deadline and because Jin was not credible, she failed to carry her burden of proof to obtain asylum. Noting that those two conclusions were dispositive to Jin's asylum claim, the BIA explicitly declined to address whether the two detentions to which Jin testified constituted past persecution or whether Jin's testimony established a well-founded fear of future persecution. As Jin was not credible, the BIA found that Jin also did not meet the more exacting standard for withholding of removal. The BIA also affirmed the IJ's denial of CAT relief because she did not show that she would more likely than not be tortured by or with the acquiescence of the government if returned to China.

## II.  DISCUSSION

### A.    Timeliness of Asylum Application

On appeal, Jin argues that she filed her asylum application within a reasonable time after discovering that Mr. Fang had not done so. We lack jurisdiction to review a determination that an asylum application is time-barred and that extraordinary circumstances did not excuse the untimely filing. See INA

8

§ 208(a)(3); 8 U.S.C. § 1158(a)(3); Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).  Thus, we lack jurisdiction to review the IJ's determination, affirmed by the BIA, that Jin's asylum application was untimely and that she failed to establish that she filed her application within a reasonable time after she learned of Mr. Fang's failure to file the application as promised.  We therefore dismiss the petition as to Jin's asylum claim and address only her claims of withholding of removal and CAT relief.

**B.      IJ's Credibility Determination**

Jin challenges the IJ's adverse credibility determination.  Jin argues that she offered reasonable explanations for why she mistakenly testified that she was beaten during her first, February 2003 detention and for why her supporting letters did not mention that she was beaten.  She also contends that her testimony that she was beaten during the first detention was not a major discrepancy.

Where, as here, the BIA adopted the IJ's reasoning regarding the alien's credibility without making additional findings, we "review the IJ's decision as if it were the BIA's."  Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230 (11th Cir. 2006)  Our review of credibility determinations is "highly deferential" and we "may not substitute our judgment for that of the Board."  Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1344-45 (11th Cir. 2008) (quotation marks and brackets omitted).

9

We review an IJ's credibility determinations under the substantial evidence test, and we will overturn them only if the record compels doing so. Chen, 463 F.3d at 1230-31.

An applicant for withholding of removal must show that it is more likely than not that she will be persecuted on a protected ground. Mendoza, 327 F.3d at 1287; see also 8 C.F.R. § 208.16(b). To be eligible for CAT relief, an alien must show that she more likely than not would be tortured if returned to the country in question. Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004); see also 8 C.F.R. § 208.16(c)(2). While credible testimony "may be sufficient to sustain the applicant's burden without corroboration," INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii), the weaker an applicant's testimony, the greater the need for corroboration. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. Cir. 2005). "Conversely, an adverse credibility determination alone may be sufficient to support the denial" of the applicant's claim, especially if the applicant fails to produce corroborating evidence. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

In evaluating credibility, the IJ must consider the "totality of the circumstances," including "the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's written and oral statements

(whenever made and whether or not under oath, and considering the circumstances under which the statement were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii); see also Chen, 463 F.3d at 1233.[1] In addition, the IJ "must offer specific, cogent reasons for an adverse credibility finding." Forgue, 401 F.3d at 1287.

Here, the IJ gave specific, cogent reasons for finding Jin not credible, and those reasons are supported by substantial evidence. The IJ identified a substantial and material inconsistency between Jin's testimony and her asylum application and asylum interview. Specifically, Jin testified in great detail that she was beaten during her first detention in February 2003, a key fact she had not included in her previous statements. Jin did not appear to have merely confused her dates given that she testified she was also beaten during her second, April 2003 detention and gave details of that detention and beating that differed from the first detention and

---

[1]Although § 1158 applies to asylum claims, an IJ's credibility findings for purposes of determining eligibility for withholding of removal are governed by § 1158(b)(1)(B). See 8 U.S.C. § 1231(b)(3)(C).

11

beating.  Further, she retracted her testimony about the first beating only after she was confronted with her asylum application and the asylum officer's interview notes on cross-examination.  Although Jin offered an explanation about being nervous, under the circumstances, the IJ and the BIA were not required to accept it.

In addition, Jin did not submit any corroborating evidence that she was beaten during either detention.  As the IJ pointed out, Jin testified that she was treated at a hospital, but did not submit medical records or any other evidence of injuries.  Further, none of Jin's supporting letters stated that she was beaten or injured.  Rather, two letters stated that Jin was arrested in April 2003, held for a time, fined and then closely monitored after her release.

While Jin suggested that the letter writers omitted the beating out of fear of the government, the IJ and the BIA found this explanation implausible given that the letter writers had admitted to belonging to an underground church that helped North Korean refugees, activities that also could draw the Chinese government's attention.  Notably, the U.S State Department's 2009 China Country Report indicated that the government had detained both members of unregistered house churches and people who gave aid to North Korean refugees.  In any event, even assuming Jin's explanation was indeed "tenable" and not implausible, it would not compel a finding that she was credible.  See Chen, 463 F.3d at 1233.

12

Although the two letters from her fellow church members corroborate her testimony that she was arrested and detained in April 2003, the IJ found them troubling because they used identical language, suggesting they were form, rather than individually written, letters. The record supports the IJ's finding that these letters contained virtually identical language.

In sum, substantial evidence supports the reasons given for discrediting Jin. Jin does not argue that other evidence in the record, absent her discredited testimony, compels a conclusion that she was persecuted or is likely to be persecuted or tortured if returned to China. Because the IJ's adverse credibility determination is supported by substantial evidence, we do not address Jin's argument that her testimony, taken as true, established her eligibility for withholding of removal or CAT relief.

**PETITION DISMISSED IN PART AND DENIED IN PART.**