[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16786
Non-Argument Calendar
_____

Agency No. A206-490-048

OSCAR ARIEL VALLECIO-ROMERO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 2, 2017)

Before HULL, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Oscar Vallecio-Romero, a citizen of Honduras, petitions for review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial, based on an adverse credibility finding, of his application for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  Upon review, we conclude that the IJ and BIA articulated specific and cogent reasons for the adverse-credibility finding, and the finding is supported by substantial evidence.  Moreover, in light of the adverse-credibility finding, no reasonable factfinder would be compelled to find that Vallecio-Romero is entitled to CAT relief.  Accordingly, we deny the petition.

## I.  BACKGROUND

In February 2014, Vallecio-Romero unlawfully entered the United States and near Hidalgo, Texas.  In a sworn statement made to border patrol agents shortly thereafter, Vallecio-Romero stated that he came to the United States to find work and study and did not fear persecution or torture if he were returned to his home country of Honduras.

### A.    Credible Fear Interview

During his subsequent credible fear interview, Vallecio-Romero stated that he feared he would be killed if he returned to Honduras for reporting the murder of his 15-year-old half-brother to police.  Vallecio-Romero explained that his half-

2

brother on his father's side, Bryan Noe Gonzalez Rodriguez ("Gonzalez"), was found dead around September 15, 2013 after having been missing for 15 days. Initially, Vallecio-Romero stated that he reported the murder to police in December 2013, when he learned who had killed Gonzalez, but he later stated that he reported the murder on September 20, 2013. Vallecio-Romero claimed that he received a threatening phone call from a member of the gang that murdered Gonzalez the day after he spoke to police, telling him to leave the country or he would be killed. Vallecio-Romero suspected that the police were working with the gang members because only the police knew his phone number. When asked why he did not tell the border patrol agents that he was afraid to return to Honduras, he said he "was scared that they would [put him] in jail."

**B.    I-589 Application**

On March 17, 2014, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), charging Vallecio-Romero as removable pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for being an applicant for admission not in possession of a valid entry document. Vallecio-Romero admitted that he was not a U.S. citizen, was a citizen of Honduras, and was not admitted or paroled into the United States after inspection, and conceded removability.

Vallecio-Romero subsequently filed an I-589 application for asylum, withholding of removal, and CAT relief. In an attached statement, Vallecio-

Romero stated, among other things, that his family discovered Gonzalez's body "a couple of days" after he went missing and that Gonzalez was "only 14 years old at the time."

In support of his application, Vallecio-Romero submitted additional documentation, including copies of his own birth certificate, and Gonzalez's birth and death certificates. Of note, Vallecio-Romero's birth certificate listed his father as Santos Carmindo Vallecio, while Gonzalez's listed his father as Jose Manuel Gonzalez Contreras. Gonzalez's death certificate, dated August 7, 2013, listed his cause of death as asphyxiation and the date of death as "4 to 6 weeks [before]." Gonzalez's birth date was June 15, 1998, making him 15 years old at the time of his death. Vallecio-Romero also provided recommendation letters from friends and family, two of which indicated that Vallecio-Romero actually witnessed Gonzalez's murder.

## C.    Merits Hearing Testimony

At the merits hearing, Vallecio-Romero again recounted Gonzalez's disappearance and murder, this time stating that he learned of the murder from Gonzalez's mother. Vallecio-Romero further testified that it was Gonzalez's mother who reported the murder to the police, and he only tried to contact police personally after he began receiving threats from the gang members who killed Gonzalez. On cross-examination, Vallecio-Romero insisted that he told the border

4

patrol agents about Gonzalez's murder, and he did not remember telling them that he came to the United States to work or study.

When the IJ asked why his and Gonzalez's birth certificates listed different fathers, Vallecio-Romero claimed that Gonzalez's mother initially denied that Vallecio-Romero's father was also Gonzalez's father, but later admitted that he was. Vallecio-Romero conceded, however, that he did not have any evidence proving Gonzalez was his true half-brother. When the IJ asked how long Gonzalez was missing before his body was discovered, Vallecio-Romero initially replied that Gonzalez was missing for "like a month." After the IJ pointed out that Vallecio-Romero had made inconsistent statements regarding the duration of Gonzalez's disappearance, Vallecio-Romero stated that "there [was not] an exact date, exact number of days," but he believed Gonzalez was missing for "15 to 30 days."

Similarly, when the IJ questioned Vallecio-Romero about Gonzalez's cause of death, he first said that he believed Gonzalez was shot. After the IJ pointed out that Gonzalez's death certificate indicated he was likely strangled, Vallecio-Romero stated that gangs did sometimes strangle victims, but that Honduras did not have the "advanced technology" necessary to determine cause of death, and he had heard different accounts of Gonzalez's death.

**D.     The IJ's Decision**

The IJ issued an oral decision denying Vallecio-Romero's application, finding that Vallecio-Romero's testimony was not credible. Among other things, the IJ found that: (1) Vallecio-Romero's signed statement to border patrol seriously undermined his credibility, and his testimony that he did not recall telling border patrol agents that he came to the United States to work and study was not believable; (2) the evidence Vallecio-Romero presented regarding Gonzalez's relatedness as a half-brother, age, date and duration of disappearance, and manner of death was unreliable given the inconsistencies between his testimony, prior statements, and documentary evidence; and (3) the documentary evidence itself contained material inconsistencies and was of questionable validity. In light of the adverse-credibility finding, the IJ determined that Vallecio-Romero failed to prove his eligibility for asylum, withholding of removal, or CAT relief.

Vallecio-Romero did not challenge the IJ's denial of asylum or withholding of removal in his appeal to the BIA, nor has he done so in his brief before this Court. Accordingly, those claims are unexhausted and abandoned, and we do not review them here. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

**E.    The BIA's Decision on CAT Relief**

Vallecio-Romero filed a notice of appeal to the BIA, arguing that the IJ erred in finding him ineligible for CAT relief because his testimony was credible and he provided corroborating evidence.  The BIA affirmed the IJ's decision, finding no clear error in the IJ's adverse-credibility finding.  The BIA agreed that there were material inconsistencies between both Vallecio-Romero's various statements to the border patrol agents, during his credible fear interview, in his asylum application, and at the merits hearing, and his testimony and the documentary evidence he provided.  The BIA further agreed that, in light of the adverse-credibility determination, Vallecio-Romero had not established that it was more likely than not that he would be tortured by or with the acquiescence of the government upon his return to Honduras.  Accordingly, the BIA dismissed Vallecio-Romero's appeal.

## II.  STANDARD OF REVIEW

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  Where the BIA expressly agrees with the IJ's reasoning, we review the IJ's decision to the extent of the agreement.  Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010).

Factual findings, which include credibility determinations, are reviewed under the substantial evidence test. Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230-31 (11th Cir. 2006). We must affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (internal quotation marks omitted). Under this highly deferential standard of review, "[w]e view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Id. (internal quotation marks omitted). Thus, a factual finding "can be reversed only if the evidence compels a reasonable fact finder to find otherwise." Chen, 463 F.3d at 1231 (internal quotation marks omitted). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Silva, 448 F.3d at 1236 (internal quotation marks omitted).

## III.  DISCUSSION

Pursuant to the REAL ID Act of 2005, Pub. L. No. 109-13 § 101, 119 Stat. 302, for applications filed after May 11, 2005, a credibility determination may be based on the totality of the circumstances, including: (1) the demeanor, candor, and responsiveness of the applicant; (2) the plausibility of the applicant's account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; and (5) the consistency of the applicant's

statements with other record evidence.  INA § 208(b)(1)(B)(iii), 8 U.S.C.

§ 1158(b)(1)(B)(iii).  When the IJ makes an adverse-credibility finding, the IJ must

offer "specific, cogent" reasons for the finding.  Chen, 463 F.3d at 1231.  The

burden then shifts to the applicant to demonstrate that the decision was not

supported by such specific, cogent reasons or was not based on substantial

evidence.  Id.  However, even a tenable explanation for any inconsistencies in the

applicant's testimony will not necessarily compel reversal of an adverse-credibility

determination.  Id. at 1233.

An applicant seeking CAT protection must establish that it is more likely

than not that he would be tortured if removed to the proposed country of removal.

Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004).

Additionally, the applicant must show that the torture would be by or with the

acquiescence of the government.  Id.

Here, the BIA and IJ gave specific, cogent reasons for the adverse-credibility

finding—namely, the inconsistencies between Vallecio-Romero's prior statements,

hearing testimony, and documentary evidence regarding (1) his reason for entry,

(2) his relationship to Gonzalez, (3) Gonzalez's age, and (4) the date, duration,

circumstances, and manner of Gonzalez's disappearance and death.  These were

legitimate considerations in assessing Vallecio-Romero's credibility, and they are

supported by substantial evidence in the record.  See INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii); Chen, 463 F.3d at 1231-33.

Furthermore, even Vallecio-Romero's proffered explanations for the inconsistencies were not always themselves consistent.  For example, Vallecio-Romero told the asylum officer at his credible fear interview that he did not tell border patrol agents his true reason for entering the United States because he was afraid that they would put him jail, but later testified that he in fact did tell the agents his true reason for entry and did not recall giving any other reason. Likewise, when confronted with the inconsistency between his testimony about Gonzalez's manner of death and Gonzalez's death certificate, Vallecio-Romero initially claimed that Honduras lacked the technology to accurately identify cause of death, and then stated that he had been given conflicting accounts of Gonzalez's death.  Thus, even if some of Vallecio-Romero's explanations may be tenable, we cannot say that they would compel a reasonable fact finder to reverse the IJ's credibility determination.  See Chen, 463 F.3d at 1233.

In light of the adverse-credibility determination, substantial evidence likewise supports the IJ's and BIA's finding that Vallecio-Romero was not eligible for CAT relief.  Absent Vallecio-Romero's testimony, the evidence in the record does not compel a finding that it is more likely than not that Vallecio-Romero

would be tortured upon his return to Honduras by or with the acquiescence of the

Honduran government.  Reyes-Sanchez, 369 F.3d at 1242.

## IV.  CONCLUSION

For all of the foregoing reasons, we deny Vallecio-Romero's petition.

**PETITION DENIED.**